UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Joan B. Gottschall |
| v. | ) | |
| | ) | No. 13 CV 7883 |
| LAURA SALAZAR, individually and | ) | |
| d/b/a JOHNNY O'S INC. d/b/a JOHNNY | ) | |
| O'S PIZZA & ITALIAN BEEF and | ) | |
| JOHNNY O'S INC. d/b/a JOHNNY O'S | ) | |
| PIZZA & ITALIAN BEEF, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff J&J Sports Productions, Inc. ("J&J Sports") filed a complaint on November 4, 2013 against Laura Salazar ("Salazar") individually and doing business as Johnny O's Pizza and Italian Beef, Inc. ("Johnny O's"). J&J Sports alleges violations of 47 U.S.C. §§ 553 (the "Cable Act") and 605 (the "Communications Act"), contending that Johnny O's improperly televised a boxing match despite J&J Sport's exclusive television distribution rights for the match. Defendant Salazar seeks to dismiss the complaint against her pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is denied.

### I. FACTS

The court draws the following facts from J&J Sports' complaint and accepts them as true for purposes of the motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).

J&J Sports, a California corporation, executed a contract and paid for the exclusive

nationwide television distribution rights for the November 12, 2011 Manny Pacquiao v. Juan Manuel Marquez, WBO Welterweight Championship Fight Program ("Program"). J&J Sports executed contracts with various entities that allowed the entities to pay to exhibit the Program. Johnny O's, a now-defunct Chicago bar, did not have authorization to exhibit the Program.[1] Regardless, it did so on November 12, 2011. Salazar was an individual with supervisory capacity and control over the activities occurring at Johnny O's on the day of the Program and received financial benefit from Johnny O's operations on that date.

## II. LEGAL STANDARD

"A motion under 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 635 (7th Cir. 2012). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To survive a motion to dismiss, the complaint must have "facial plausibility," which occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009). In addition, on a defendant's motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

---

[1] Johnny O's was dissolved as a corporation on February 10, 2012. (*See* Order, ECF No. 26.)

### III. ANALYSIS

Salazar seeks to dismiss the complaint against her. She asserts that the "complaint reveals no factual basis to hold [her liable] in her individual capacity for violations" of the Cable Act and that "the complaint fails to state a claim against [her] in her individual capacity." (Def. Mtn., ECF No. 28.) This is the entirety of Salazar's "argument" in her motion to dismiss. In Salazar's reply, she attempts to argue that "there is no allegation that [she] actually did anything" and "there is no allegation of affirmative or specific action taken by [her] against plaintiff or plaintiff's rights." (*Id.*)

Salazar's contention that "a review of the complaint reveals no factual basis to hold [her liable] in her individual capacity for violations of the Act" and that "[p]laintiff fails to state a claim against [her] in her individual capacity upon which relief can be granted" is unavailing. In her two-page motion, which consists of seven paragraphs – two of which simply repeat the basis for the suit and one of which informs the court that it has authority to dismiss cases under 12(b)(6) – Salazar offers neither authority nor analysis to support her contention that the suit against her in her individual capacity should be dismissed.

Instead, relevant authority counsels denying the motion to dismiss. Under the Cable Act, no person shall "intercept or receive or assist in intercepting or receiving any communications service offered over a cable system." *See* 47 U.S.C. § 553. The Communications Act similarly prohibits "anyone from receiving or assisting in receiving certain communications without authorization." *See* 47 U.S. § 605.[2] Individual liability

---

[2] Plaintiffs cannot recover under both Acts because § 605 applies to the unlawful interception of cable programming transmitted through the air and § 553 applies to the interception of cable programming transmitted over a cable system. *See J&J Sports*

for violations of either act may arise when an individual has a right and ability to supervise the violations. *See J&J Sports Prods. Inc. v. Ribeirao*, 562 F.Supp.2d 498, 501 (S.D.N.Y. 2008) ("To hold Ribeiro vicariously liable in her individual capacity under § 605, J&J Sports must show that Ribiero had a right and ability to supervise the violations, and that she had a strong financial interest in such activities.").

A complaint states a plausible claim for relief against an individual when it alleges that the individual had (1) a right and ability to supervise the violations and (2) a financial interest in committing the violations (*i.e.*, profits realized from exhibiting the fight to customers). For example, in *Joe Hand Promotions, Inc. v. Hurley*, David Hurley was sued as an individual for violating the Cable Act or the Communication Act. *Joe Hand Promotions, Inc. v. Hurley*, No. 11-0538-DRH, 2011 WL 6727989, at *2, (S.D. Ill. Dec. 21, 2011). The allegations in the complaint against him stated, in relevant part:

> David Hurley is an individual and the principal, alter ego, officer, director, shareholder, employee, agent, and/or other representative of a business entity, DAVID HURLEY LTD. d/b/a HURLEY'S DANCE CLUB.
> . . .
> [E]ach and every of the above named defendants and/or their agents, servants, workmen, or employees did unlawfully publish, divulge, and exhibit the Program at the time of its transmission at the address of each of their respective establishments, as indicated above. Such unauthorized interception, publication, exhibition and divulgence by each of the defendants was done wilfully [sic] and for purposes of direct or indirect commercial advantage or private financial gain.

*Id*.

The court in *Hurley* found that these allegations in the complaint stated a claim for relief against the plaintiff that was "plausible on its face." *Id*. (citing *Ashcroft v. Iqbal*,

---

*Productions, Inc. v. Rezdndiz*, No. 08-C-4121, 2008 WL 5211288, at *2 (N.D. Ill. Dec. 9, 2008). However, complaints that allege violations under both Acts are construed to mean that a plaintiff is pleading in the alternative since discovery is usually necessary to determine how the program is intercepted. *Id*.

4

556 U.S. 662). *See also Rezdndiz*, 2008 WL 5211288, at *2; *Joe Hand Promotions, Inc. v. Speakeasy GB, LLC*, No. 12-C-0343, 2013 WL 64630, at *2 (E.D. Wis. Jan. 4, 2013) (finding personal liability appropriate where the complaint alleged "upon information and belief that the [named individual] was the individual with supervisory capacity and control over the activities occurring [at the bar] and that she received financial benefit from the operations [on the night the violation occurred.]").

Here the complaint alleges that "Laura Salazar is an officer, director, shareholder and/or principal of Johnny O's Inc. d/b/a Johnny O's Pizza & Italian Beef." (Complaint ¶ 8, ECF No. 1.) It also alleges that Salazar "was an individual with supervisory capacity and control over the activities occurring within the establishment of Johnny O's . . . on November 12, 2011," and that she "received a financial benefit from the operations of Johnny O's Inc. . . . on November 12, 2011." (*Id.* at ¶ 17.) The complaint also states:

> With full knowledge that the Program was not to be intercepted, received and exhibited by entities unauthorized to do so, each and every of the above named defendants and/or their agents, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program at the time of its transmission at the addresses of their respective establishments, as indicated above. Said unauthorized interception, publication, exhibition and divulgence by each of the defendants was done willfully and for purposes of direct or indirect commercial advantage or private financial gain.

(Complaint at ¶ 17.)

Because the language in J&J Sports' complaint precisely tracks language that has been held to state a claim for relief that is "plausible on its face," the court denies Salazar's motion to dismiss.

In sum, J&J Sports has clearly alleged that Salazar was an individual with supervisory control over the establishment where the unauthorized broadcast was shown and that she received a financial benefit from the operations of the establishment. Such

5

allegations are sufficient to survive the motion to dismiss.

## IV. Conclusion

For the reasons set forth in this Order, the court denies Salazar's motion to dismiss the complaint against her.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 18, 2014